## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUBEL ROYBAL,

       Plaintiff,

vs.                                                                                       No. CIV 08-0181 JB/LFG

CITY OF ALBUQUERQUE, YVONNE MARTINEZ,
DENNIS TAFOYA, GEORGE TRUJILLO,
PETER DWYER, LORRAINE SADLER-LOPEZ,
City of Albuquerque Police Officers,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Joint Motion for Summary Judgment and Memorandum in Support, filed September 17, 2008 (Doc. 30).  The Court held a hearing on January 5, 2009.  The primary issue is whether Plaintiff Rubel Roybal's lawsuit is barred by: (i) the doctrine of res judicata; (ii) collateral estoppel; or (iii) the equitable doctrine of laches.  For reasons stated at the hearing, for further reasons consistent with those already stated, and because the Court concludes that Mr. Roybal and his wife, Mary Roybal, are not the same person and not in privity with each other, the Court holds that his wife's similar civil rights suit does not bar Mr. Roybal's present lawsuit.  Moreover, even though Mr. Roybal was aware of and participated in the proceedings in his wife's case, the equitable doctrine of laches does not bar him from presenting his claims in this case, which is an action at law seeking damages under 42 U.S.C. § 1983.  The Court will therefore deny the motion for summary judgment.

### FACTUAL BACKGROUND

This case stems from an incident in which Albuquerque Police Department ("APD") officers

responded to a call for "excessive noise coming from the home" of Mr. and Mrs. Roybal.  Mary Roybal v. City of Albuquerque, CV 2005 08950, Complaint Under 42 U.S.C. Section 1983 for Recovery of Personal Injuries ¶ 5, at 2, filed November 18, 2005 (Second Judicial District Court, County of Bernalillo, State of New Mexico), filed in this Court on September 17, 2008 (Doc. 30-2)("Mrs. Roybal's Complaint").  According to Mrs. Roybal's Complaint, "Mrs. Roybal and her children were listening to music, playing pool and enjoying the company of their children," and "Mrs. Roybal's husband and an adult son were drinking beer."  Id. ¶¶ 9, 10, at 2.  APD officers arrived at the house and, Mrs. Roybal alleged, "immediately entered" the Roybals' garage, id. ¶ 9, at 2, without receiving consent to enter, see id. ¶ 11, at 2.  During their investigation, the officers came to believe that there may have been underage drinking taking place in the home.  See Exhibit B to Motion, Trial Testimony of Mary Roybal at 63:8-64:2, 66:23-67:10 (taken August 28, 2007)(Doc. 30-3).  After Mrs. Roybal allegedly poked one of the officers in the chest, she was arrested and later charged with battery and resisting arrest.  See Mrs. Roybal's Complaint ¶¶ 19-21, at 3.  The events involving the officers' entry into the Roybals' home, the officers' investigation, and Mrs. Roybal's subsequent arrest formed the basis for Mrs. Roybal's claims.  See id. ¶¶ 5-37, at 2-4.

On November 18, 2005, Mrs. Roybal filed her Complaint against the City of Albuquerque, and APD police officers Yvonne Martinez, B. De Herrera, Dennis Tafoya, and George Trujillo.[1] Mrs. Roybal alleged that the officers' search of her home was unlawful and that her arrest was in retaliation for protesting the entry.  See id. ¶¶ 4, 24 & 32 at 1, 3 & 4.  Although she initially filed her case in state court, the case was removed to federal court.

---

[1] All the parties named in Mrs. Roybal's Complaint, with the exception of De Herrera, are Defendants in this case.

In federal court, Mrs. Roybal moved for summary judgment and the Honorable William P. "Chip" Johnson, United States District Judge, granted summary judgment in her favor, finding that the warrantless entry by officers Martinez, Tafoya, and Trujillo violated the Fourth Amendment. See Mary Roybal v. City of Albuquerque, No. CIV 05-1326, Memorandum Opinion and Order on Plaintiff's Motion for Summary Judgment at 25, entered March 20, 2007. The case then proceeded to a jury trial later in 2007. Mr. Roybal was a key witness at the trial. The jury returned a verdict against Mrs. Roybal on her remaining claims for wrongful arrest, retaliation, and municipal liability, but awarded her $42,000.00 for her unlawful search claim. On the basis of the jury verdict, Judge Johnson entered a judgment awarding Mrs. Roybal $42,000.00 for her unlawful search claim and dismissing the remaining claims. See Mary Roybal v. City of Albuquerque, No. CIV 05-1326, Judgment in a Civil Case, entered September 11, 2008 ("Judgment").

At the time that Mr. Roybal testified at his wife's trial, the couple had been married for twenty-five years and enjoyed a close relationship. See Motion ¶¶ 9-10, at 4. Mr. Roybal was aware of his wife's lawsuit and testified at her trial that he had not filed suit against the City of Albuquerque or any APD officers. See id. ¶ 13, at 4. Many of the facts underlying Mrs. Roybal's claims are identical to the facts in the present case, and Mr. Roybal's counsel admits to using Mrs. Roybal's complaint as a template for the Complaint here. See Response ¶ 5, at 2. Mr. Roybal notes, however, that Mrs. Roybal alleged wrongful arrest against Tafoya for her arrest in the home's stairway, whereas Mr. Roybal's wrongful arrest claim is against Trujillo for an incident occurring in the garage. See id. Mr. Roybal also points out that, unlike his wife, he is pleading excessive force as well. See id. ¶ 3, at 2.

## PROCEDURAL BACKGROUND

Mr. Roybal filed his Complaint in state court on January 18, 2008. See Exhibit A to Notice

of Removal, Complaint Under 42 U.S.C. Section 1983 for Recovery of Personal Injury Damages (Doc. 1-2)("Complaint").  The Complaint was filed a few months after judgment was entered in Mrs. Roybal's case on September 11, 2007.  See Judgment. The Defendants removed Mr. Roybal's case to federal court on February 19, 2008.  See Notice of Removal at 1, filed February 19, 2008 (Doc. 1).

The Defendants now move for summary judgment on three grounds: (i) res judicata; (ii) collateral estoppel; and (iii) laches.[2] They contend that Mr. Roybal's Complaint in this case mirrors, in most meaningful ways, the complaint that Mrs. Roybal filed.  See Motion at 1.  The Defendants state that claim preclusion has three elements, which they contend are met here: "(1) a final judgment on the merits in the previous action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  Motion at 5 (citing Santana v. City of Tulsa, 359 F.3d 1241, 1246 n. 3 (10th Cir. 2004)).  The Defendants also note that courts also often consider a factor that tends to merge into the other elements: whether a party has had a full and fair opportunity to litigate his or her claim in the prior suit.  See Motion at 5.

The Defendants contend that there is a final judgment, because summary judgment was granted to Mrs. Roybal on her search-and-seizure claim and the remaining claims were the subject of a jury verdict and judgment.  See id. at 6.  The Defendants argue that Mr. Roybal maneuvered to avoid litigation and has the same attorney as Mrs. Roybal.  The Defendants further contend that, because of community-property law, Mr. Roybal had an interest in Mrs. Roybal's case and in the damages awarded in that case.  See id. at 7.  The Defendants also point to the Roybals' long marriage, close relationship, and joint ownership of the home that police entered.  See id. at 8.

---

[2] The motion was filed on behalf of all Defendants other than Trujillo, who has not yet been served with the Complaint.

Finally, the Defendants contend that, although not all the Defendants here were in the earlier lawsuit, all the Defendants are in privity with the earlier defendants. See id. at 8-9.

Turning to identity of the cause of action, the Defendants argue that the United States Court of Appeals for the Tenth Circuit has adopted a transactional approach in determining what constitutes a cause of action. The Defendants maintain that Mr. Roybal's claims all stem from the same set of events at issue in the earlier case, with some minor additional facts regarding Mr. Roybal's arrest that are concurrent with the other events. The Defendants therefore contend that both Mr. and Mrs. Roybal's claims arise from the same transaction. See id. at 9-10. The Defendants also assert that Mr. Roybal was a witness in his wife's case, and had knowledge of the case and a full and fair opportunity to join her case and litigate his claims. See id. at 10-11. The Defendants further maintain that, for the same reasons that claim preclusion should apply, issue preclusion or collateral estoppel should apply. See id. at 11-12.

The Defendants' last argument is that laches bars Mr. Roybal's claims. The Defendants argue that Mr. Roybal was aware of his wife's case and of his own potential claims, but choose to wait rather than join her lawsuit, either as a plaintiff from the start or as an intervenor. See id. at 12-13. The Defendants assert that they are surprised by Mr. Roybal's decision to sue and face prejudice from successive lawsuits, additional defense costs, and the prospect of further litigation from others who were present in the Roybal home at the time of the officers' entry. See id. at 13-14.

Mr. Roybal counters that he is not in privity with his wife and that he is asserting a distinct cause of action. Mr. Roybal argues that civil rights are unique and personal rights that are not shared with others. See Plaintiffs' Response to Defendants' Joint Motion for Summary Judgment at 5, filed October 17, 2008 (Doc. 33)("Response"). He contends that the Defendants' argument that a joint-property interest in Mrs. Roybal's damages award leads to them owning each others' civil rights is

"a convolution of logic . . . ." Id. at 6.  Mr. Roybal goes on to contend that the various cases the Defendants cited are largely inapposite or irrelevant.  See id. at 7-8.  Mr. Roybal further contends that his cause of action is distinct from Mrs. Roybal's, involving different arrests made by different police officers.  See id. at 8-9.

On the issue of laches, Mr. Roybal argues that the City of Albuquerque's no-settlement policy led to the present situation.  He contends that the City of Albuquerque could have settled the claims of all the Roybals, but refused to, requiring the Roybals' counsel to litigate to protect each family member's individual rights and interests.  See id. at 9-10.  Mr. Roybal argues that the Defendants cannot invoke equity in such circumstances.  Mr. Roybal concludes with the argument that laches requires some change in position that would make allowing a suit inequitable, which he contends the Defendants have not shown.  See id. at 11-12.

The Defendants agree that Mr. Roybal's claim is individual, but contend that his argument is off base because all claims are individual.  The issue, the Defendants maintain, is whether "'the parties in the two actions are really and substantially in interest the same.'" Reply in Support of Defendants' Joint Motion for Summary Judgment and Memorandum in Support at 2, filed October 24, 2008 (Doc. 35)("Reply")(quoting Pelt v. Utah, 539 F.3d 1271, 1281 (10th Cir. 2008)).  The Defendants contend that Mr. and Mrs. Roybal, asserting violations of civil rights based on the same set of operative facts, share a sufficient identity of interest.  See Reply at 2.  The Defendants also assert that Mr. Roybal misapprehends their argument that Mr. Roybal's interest in Mrs. Roybal's award supports a finding of privity.  The Defendants contend that Mr. Roybal conflates privity with cause of action and that his arguments would lead to the illogical result that privity could never exist in civil-rights cases.  See id. at 2-3.  The Defendants further argue that Mr. Roybal's argument that his cause of action is different than Mrs. Roybal's ignores the standard for claim preclusion, which

sweeps in not only causes of action actually litigated, but also those that could have been raised in a prior action.  See id. at 3.

Finally, the Defendants argue that Mr. Roybal's explanation of his delay in bringing suit hurts his cause.  The Defendants contend that Mr. Roybal's argument reveals that he deliberately chose to sit back and wait.  See id. at 4.  The Defendants also maintain that they suffered prejudice from Mr. Roybal's delay and assert that, had they known Mr. Roybal intended to file suit as well, they would have pursued a different litigation strategy in the earlier case.  See id. at 4-5.

Because neither sides' briefing had raised the Supreme Court of the United States' recent decision in Taylor v. Sturgell, 128 S.Ct. 2161 (2008) -- which was handed down approximately three months before the present motion was filed -- the Court asked the parties to address the decision's impact at the hearing.  The Defendants' counsel, Patricia Padrino, stated that she believed the Defendants' arguments for claim preclusion fit within two exceptions to the rule against non-party preclusion: (i) pre-existing legal relationship; and (ii) adequate representation.  See Transcript of Hearing at 10:23-11:1 (taken January 5, 2009)(Padrino)("Tr.").[3]

## LAW REGARDING CLAIM PRECLUSION

The doctrine of res judicata, or claim preclusion, "bars a second suit involving the same parties or their privies based on the same cause of action."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).  The case law from the Tenth Circuit requires that three elements be met to invoke claim preclusion: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  Pelt v. Utah, 539 F.3d at 1281.   If these requirements are met, claim preclusion is appropriate unless the party

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

seeking to avoid preclusion did not have a full and fair opportunity to litigate in the first action.  See Yapp v. Excel Corp., 186 F.3d 1222, 1226 n.4 (10th Cir. 1999).

The Supreme Court, in Taylor v. Sturgell, recently clarified when preclusion may appropriately be applied to those who were not actual parties in the earlier litigation.  The Supreme Court reiterated: "'It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" 128 S.Ct. at 2166-67 (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940)).  The Supreme Court eliminated the broad doctrine of virtual representation, which allowed preclusion on the grounds of a sufficiently close relationship, that had prevailed in some federal circuits.  See Taylor v. Sturgell, 128 S.Ct. at 2167, 2170 & 2178.

The Supreme Court recognized six exceptions to the general rule against non-party preclusion: (i) when the non-party "agrees to be bound by the determination of issues in an action between others," id. at 2172 (internal quotation marks omitted); (ii) based on pre-existing substantive legal relationships that "include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor," id.; (iii) when the non-party was "adequately represented by someone with the same interests who" was a party in the prior lawsuit, id. (internal quotation marks omitted); (iv) when the non-party assumed control over the earlier litigation, see id. at 2173; (v) when the non-party is suing on behalf of the party to the earlier litigation, see id.; and (vi) where a "a special statutory scheme" forecloses successive litigation, provided due process is met, id.  The Supreme Court did not eliminate all aspects of virtual representation -- the situations other courts labeled virtual representation were too diverse and could be justified on traditional grounds.  Instead, the Supreme Court declared that "[t]he preclusive effects of a judgment in a federal-question case decided by a federal court should . . . be determined

according to the established grounds for nonparty preclusion described in" <u>Taylor v. Sturgell</u>.  <u>Id.</u>
at 2178.

## LAW REGARDING LACHES

"'Laches consists of two elements: (1) inexcusable delay in instituting a suit; and (2)
resulting prejudice to [the] defendant from such delay.'"   <u>Trustees of the Centennial State</u>
<u>Carpenters' Pension Trust Fund v. Centric Corp. (In re Centric Corp.)</u>, 901 F.2d 1514, 1519 (10th
Cir. 1990)(quoting <u>Brunswick Corp. v. Spinit Reel Co.</u>, 832 F.2d 513, 523 (10th Cir. 1987)).
"Laches is considered an equitable defense, controlled by equitable considerations.  As with other
equitable defenses, the existence of laches is a question primarily addressed to the discretion of the
trial court."  <u>Mile High Industries v. Cohen</u>, 222 F.3d 845, 857 (10th Cir. 2000)(internal quotation
marks and citations omitted).

As an equitable defense, laches traditionally applies only to claims for equitable relief, and
not to actions at law.  The "application of the equitable defense of laches in an action at law would
be novel indeed." <u>Oneida County, New York v. Oneida Indian Nation of New York State</u>, 470 U.S.
226, 245 n.16 (1985).

> Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the
> principle that laches is not, like limitation, a mere matter of time; but principally a
> question of the inequity of permitting the claim to be enforced, -- an inequity
> founded upon some change in the condition or relations of the property or the parties.

<u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 396 (1946)(internal quotation marks omitted).

At least two circuit courts of appeal have had the opportunity to address the applicability of
laches to actions at law under 42 U.S.C. § 1983.  In <u>Baker v. F & F Inv.</u>, 420 F.2d 1191, 1193 (7th
Cir. 1970), the United States Court of Appeals for the Seventh Circuit held that laches did not
govern claims under the Civil Rights Act where the complaint sought "money damages, both actual

and punitive, and," therefore was not "exclusively equitable."  Baker v. F & F Inv., 420 F.2d at

1193.  More recently, in Ivani Contracting Corp. v. City of New York, 103 F.3d 257 (2d Cir. 1997),

the United States Court of Appeals for the Second Circuit held that laches was inapplicable to §

1983 claims seeking money damages.  After an extensive discussion on laches and its intersection

with federal law, the Second Circuit held that laches could not bar a legal claim for damages under

§ 1983.  See Ivani Contracting Corp. v. City of New York, 103 F.3d at 259-62.

## ANALYSIS

Under Taylor v. Sturgell, Mr. and Mrs. Roybal's marriage and closeness will not support a

finding that they are in privity with each other.  Accordingly, the doctrines of res judicata and

collateral estoppel do not bar Mr. Roybal from asserting his similar claims and issues against the

same Defendants or their privies.  Additionally, because laches is an equitable doctrine, it will not

bar a claim for damages under 42 U.S.C. § 1983.

## I.    CLAIM PRECLUSION DOES NOT BAR THIS LAWSUIT.

Res judicata, or claim preclusion, will prevent successive litigation where three elements are

met: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the

two suits; and (3) identity of the cause of action in both suits."  Pelt v. Utah, 539 F.3d at 1281.  The

Defendants argue that Mr. Roybal's present lawsuit is barred under the doctrine of claim preclusion.

Mr. Roybal does not challenge the first element of claim preclusion, but contends that he is not in

privity with his wife and that his cause of action is a separate, individual right.

The Supreme Court's recent decision in Taylor v. Sturgell has changed the framework in

which claim preclusion operates.  Taylor v. Sturgell abolished the expansive doctrine of virtual

representation and tightened the circumstances in which a non-party can be bound by a earlier

judgment.  The Supreme Court identified six exceptions to the general that non-party preclusion is

impermissible.  These exceptions are either synonymous with privity, or, at a minimum, encompass privity, as well as additional grounds for non-party preclusion.  In outlining the circumstances in which preclusion is acceptable, the Supreme Court eschewed using the term "privity," noting that privity has been defined both as those "substantive legal relationships justifying preclusion" -- the second category in Taylor v. Sturgell -- and also more broadly as any basis for non-party preclusion. Id. at 2172 n.8.  The Tenth Circuit seems to equate privity with the six categories.  See Pelt v. Utah, 539 F.3d at 1281-82 (discussing broad definition of privity and listing the six Taylor v. Sturgell categories).  Regardless of the precise boundaries of privity as a term of art, in the wake of Taylor v. Sturgell, it is clear that, for claim preclusion to apply to a non-party, one of the six categories must be present.  The Defendants point to two categories as justifying the application of claim preclusion here: (i) pre-existing substantive legal relationship; and (ii) adequate representation by someone with the same interests who was a party to the prior lawsuit.  This case, however, does not fit within the confines of either category.

**A.   CLAIM PRECLUSION IS NOT JUSTIFIED HERE ON THE BASIS OF A PRE-EXISTING SUBSTANTIVE LEGAL RELATIONSHIP.**

Those relationships qualifying as pre-existing substantive legal relationships "include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. . . . These exceptions originated as much from the needs of property law as from the values of preclusion by judgment."  Taylor v. Sturgell, 128 S.Ct. at 2172 (internal quotation marks omitted).  Although this list of qualifying relationships is not exhaustive, it does not easily encompass the First and Fourth Amendment claims Mr. Roybal brings here.  All of the illustrative examples the Supreme Court gives involve traditional property or contract interests and relationships.  In each of the scenarios, a person effectively steps into the shoes of another person

by virtue of some transaction or relationship, such as when an assignment occurs. While the Supreme Court did not foreclose additions to the list, the narrow class of examples given cautions against any significant deviations.  It would take a significant expansion of the boundaries of the substantive legal relationships supporting preclusion to bring Mr. and Mrs. Roybal's relationship within their scope.

The argument most on point is the Defendants' assertion that "Mr. and Mrs. Roybal share a property interest in the award Mrs. Roybal received in the previous litigation, as property acquired during the marriage is presumptively community property."  Motion at 7.  The Defendants seem to be arguing that Mr. Roybal would have a property interest in any award Mrs. Roybal received and therefore had a financial stake in her litigation.  This principle may reasonably apply in the proper circumstances, but the Court does not believe that a federal cause of action for deprivation of civil rights is the proper situation.

The rule the Defendants advocate, and possibly the California cases they cite in support, would effectively make spouses always in privity in a community-property state.  This principle would smuggle in a broad rule of privity that is in tension with the narrow exceptions that have been carved out of the general proposition that a non-party cannot be subject to preclusion.  Given the long history of community property in a number of states, the Court would expect a more well-known rule to have developed as an exception to non-party preclusion if marriage was a generally recognized basis for privity in community-property states.

Moreover, in New Mexico, not all damages awards are community property.  At least since the middle of the twentieth century, New Mexico law has recognized that a spouse's recovery for personal injury and pain-and-suffering damages are separate property.  See Romero v. Byers, 17 N.M. 422, 426, 872 P.2d 840, 844 (1994); Soto v. Vandeventer, 56 N.M. 483, 494, 245 P.2d 826,

-12-

832-33 (1952).  By contrast, recoveries for damages to the community of husband and wife, such as damages for medical expenses, are community property.  See Soto v. Vandeventer, 56 N.M. at 494, 245 P.2d at 833.  The civil-rights violations that Mrs. Roybal asserted and that Mr. Roybal now asserts are personal in nature.  See Alderman v. United States, 394 U.S. 165, 174 (1969)("Fourth Amendment rights are personal rights").  Although the Court is not aware of any court, in New Mexico or otherwise, discussing whether the proceeds of a civil rights suit are community property, New Mexico's treatment of damage awards indicates that such awards should be considered separate property.  Accordingly, the principle that the Defendants invoke is not implicated under New Mexico's community-property regime.

### B.   CLAIM PRECLUSION IS NOT JUSTIFIED HERE ON THE BASIS OF ADEQUATE REPRESENTATION.

Those "limited circumstances" in which "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the" earlier lawsuit ". . . include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries."  Taylor v. Sturgell, 128 S.Ct at 2172-73 (internal quotation marks and citations omitted).  What these examples of "adequate representation" all share is that the party in the prior suit was acting in a representative capacity, either for a group, in a class action, or directly for someone else, in the case of trustees, guardians, and other fiduciaries.  Mrs. Roybal was acting for herself in her lawsuit.  She was not the lead plaintiff in a class action, and while society may impose certain expectations on her as a spouse, the law does not make her the fiduciary of her husband in litigation.  Mr. and Mrs. Roybal may have a close, intimate relationship, but that will not suffice to allow claim preclusion in the aftermath of Taylor v. Sturgell.

Taylor v. Sturgell rejected the argument that "[p]reclusion is in order . . . whenever the

-13-

relationship between a party and a non-party is close enough to bring the second litigant within the judgment." Id. at 2174-75 (internal quotation marks omitted). Instead, the Supreme Court emphasized "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party," subject only to "discrete exceptions that apply in limited circumstances." Id. at 2175 (internal quotation marks omitted). The Defendants' argument boils down to the contention that Mr. and Mrs. Roybal are "close enough" to justify the Court barring one spouse's claims because of the other spouse's litigation. That rationale finds no support in the six traditional, limited categories allowing for non-party preclusion.

The remainder of the factors that the Defendants raise, such as representation by the same attorney and Mrs. Roybal's incentive to vigorously litigate, similarly are beyond the scope of the adequate representation category or of any of the other five categories. Additionally, many of the cases the Defendants cite find privity in situations that would likely run afoul of Taylor v. Sturgell. The cases from the Northern District of Illinois that the Defendants rely upon, for example, invoke the now-eliminated doctrine of virtual representation. Henderson v. Stone, 1989 WL 81818 (N.D. Ill. 1989), expressly used virtual representation to preclude a wife's civil-rights lawsuit based on her having been a witness at her husband's suppression hearing. See id. at *5 ("We conclude that [the plaintiff's] interests were so aligned with her husband's as to make him a virtual representative in the prior proceedings for collateral estoppel purposes."). Anderson v. City of Chicago, 2004 WL 626528 (N.D. Ill. 2004), did not mention virtual representation, but held that a plaintiff's privacy interests in her home were "perfectly co-extensive with her father's interests" and thus barred the plaintiff from bringing suit based upon her father's having lost a suppression motion. Id. at *7. The district court then cited Henderson v. Stone as the authority for its conclusion. While virtual representation is not per se invalid, provided the underlying theory is justified on one of the six

traditional grounds for preclusion, the facts of these cases, involving family members and suppression hearings, indicate that they are grounded in the theories that <u>Taylor v. Sturgell</u> eliminated.

### C.   THE COURT NEED NOT DECIDE WHETHER THERE IS AN IDENTITY OF CAUSE OF ACTIONS IN BOTH LAWSUITS.

All three elements of claim preclusion must be satisfied before it will bar a plaintiff's claim. Because the Defendants are unable to show that Mr. Roybal was in privity with Mrs. Roybal, the Court need not address the third element, which Mr. Roybal also challenges -- whether there is an identity of causes of action.  The Court notes, however, that under the transactional approach that prevails in the Tenth Circuit, it is likely that the third element is present.  <u>See Petromanagement Corp. v. Acme-Thomas Joint Venture</u>, 835 F.2d 1329, 1335 (10th Cir. 1988)(adopting transactional approach to determining what claims constitute a cause of action in claim preclusion).

### II.   ISSUE PRECLUSION DOES NOT BAR THE ISSUES RAISED IN MR. ROYBAL'S COMPLAINT.

The Defendants also contend that collateral estoppel, or issue preclusion, bars the issues Mr. Roybal raises.  The elements of issue and claim preclusion are similar.  In particular, both doctrines require identity or privity of parties.  <u>See Union Telephone Co. v. Qwest Corp.</u>, 495 F.3d 1187, 1194 (10th Cir. 2007)(stating that third factor in applying issue preclusion is "whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication").  Just as the Defendants' claim-preclusion defense must fail because of a lack of privity, so to must their invocation of issue preclusion fail.

### III.   THE EQUITABLE DOCTRINE OF LACHES DOES NOT BAR MR. ROYBAL'S CLAIMS.

Laches prevents a litigant from sleeping on his or her rights and unreasonably delaying the

bringing of a claim.  While the Defendants contend that Mr. Roybal has done just that, laches is an equitable doctrine that applies to actions in equity.  Mr. Roybal seeks damages.  Laches will not cut off a claim under 42 U.S.C. § 1983 seeking damages, a remedy at law.  Additionally, the Court does not believe, on the record properly before it, that laches would be appropriate in this situation.

### A.       THE DOCTRINE OF LACHES DOES NOT APPLY TO § 1983 CLAIMS FOR DAMAGES.

While the Tenth Circuit has not ruled on the issue, the Court believes that the weight of authority and reason rests on the side of laches being inapplicable, as a matter of law, to § 1983 actions seeking damages.  All of Mr. Roybal's claims arise under 42 U.S.C. § 1983 and seek damages rather than equitable relief.  See Complaint at 5 (requesting in prayer for relief "compensatory damages . . . . punitive damages . . . . pre- and post-judgment interest, and attorney fees . . .").  Accordingly, laches is not an obstacle to any claim Mr. Roybal brings in this suit.

Laches is an equitable defense.  See, e.g., Mile High Industries v. Cohen, 222 F.3d at 857. The "application of the equitable defense of laches in an action at law would be novel indeed." Oneida County, New York v. Oneida Indian Nation of New York State, 470 U.S. at 245 n.16.  Given the equitable nature of the laches doctrine, it would be unusual for a court to allow laches to bar a suit seeking monetary damages, whether in the context of a § 1983 civil rights action or otherwise. Beyond this general rule, several courts have specifically held that the defense of laches is unavailable in a § 1983 suit seeking damages for civil rights violations.

In Baker v. F & F Inv., the Seventh Circuit held that laches did not govern claims under the Civil Rights Act where the complaint sought "money damages, both actual and punitive, and," therefore was not "exclusively equitable."  Baker v. F & F Inv., 420 F.2d at 1193.  More recently, in Ivani Contracting Corp. v. City of New York, the Second Circuit held that laches was inapplicable

to § 1983 claims seeking money damages.  After an extensive discussion on laches and its intersection with federal law, the Second Circuit held that laches could not bar a legal claim for damages under § 1983.  See Ivani Contracting Corp. v. City of New York, 103 F.3d at 259-62.

One case that has applied laches to a § 1983 claim is the United States Court of Appeals for the Sixth Circuit's unpublished decision in Galbreath v. Birch, 162 F.3d 1161, 1998 WL 552752 (6th Cir.)(table)(unpublished).  Putting aside any issues about the precedential value of the case, even Galbreath v. Birch may not have applied laches to bar a claim for damages.  The Sixth Circuit's discussion indicates that the lower court had allowed the plaintiff to "withdraw his claim for money damages," so it may have been that the plaintiff was seeking only equitable relief when laches was applied.  Id. at *1.  The Court is not aware of any other case in which a court has used laches to bar a § 1983 claim that included a claim for damages.

At the hearing, Ms. Padrino stated she believed that a Tenth Circuit case she cited in her motion, Ute Indian Tribe of Uintah and Ouray Reservation v. Probst, 428 F.2d 491 (1970), involved a defense of laches in a case involving more than just equitable relief.  See Tr. at 6:17-7:13 (Court & Padrino).  In that case, however, the "Ute Indian Tribe sued for certain equitable relief and for cancellation of a deed . . . ."  Ute Indian Tribe of Uintah and Ouray Reservation v. Probst, 428 F.2d at 494.  While the Tenth Circuit's separating "cancellation of a deed" from "certain equitable relief" might imply that the action was not entirely equitable, it is likely that this choice of words was merely meant to reference several miscellaneous equitable remedies that were sought in addition to cancellation.  Cancellation of a deed is generally understood to be an equitable remedy.  See Lawson v. Haynes, 170 F.2d 741, 742 (10th Cir. 1948)(noting appellants brought "suit in equity against the appellee to cancel a mineral deed").  The Court is not aware of any case in the Tenth Circuit holding that the doctrine of laches could be applied to an action seeking purely legal relief.

In sum, the Court does not see any sound reason for extending the reach of laches to a § 1983 action seeking damages.  Applying laches here would run afoul of the longstanding principle that laches is a defense only to equitable relief.  Nothing in the case law from the Tenth Circuit or elsewhere dictates or even suggests adopting such an approach.  For actions at law, protection from stale claims is provided by statutes of limitations.  Laches was a doctrine born in equity to prevent untimely equitable claims, which are normally not subject to statutes of limitations, from being brought.  See Holmberg v. Armbrecht, 327 U.S. at 396 (noting that statutes of limitations do not apply in equity, which "eschews mechanical rules," and that instead equity follows the principle of laches, which "is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced").  The Court will not transfer the doctrine of laches from equity to a legal claim under § 1983 for damages.

**B.      THE COURT CANNOT SAY ON THE RECORD PROPERLY BEFORE IT THAT LACHES WOULD BAR MR. ROYBAL'S CLAIMS.**

Even if the doctrine of laches applied to § 1983 claims for damages, the Court cannot say, on the record properly before it, that Mr. Roybal needlessly delayed in presenting his claims.  The Defendants argue that they will suffer prejudice from having to face piecemeal litigation, incurring "double the expense in defending against claims which could have been resolved in the previous litigation."  Motion at 14.[4]  The Plaintiffs contend that equity is not on the Defendants' side, because the City of Albuquerque's no-settlement policy has led to this situation, and that the Defendants have not changed their position in a way that would make allowing the litigation to proceed

_____

[4] The Defendants also contend they face prejudice from "potential lawsuits by each and every person in the Roybals' house at the time the officers entered."  Motion at 14.  Such potential parties in such hypothetical lawsuits are not before the Court, and the Court does not see how the potential claims of others affects the laches analysis for Mr. Roybal's lawsuit.

inequitable.  The Defendants also argue, in their Reply, that "the strategy followed by the City of Albuquerque would have differed markedly had it known of Mr. Roybal's intention to sue in a subsequent action."   Reply at 4.   Given that the Court rests its holding primarily on the inapplicability of laches to this suit as a matter of law, the Court will not address the arguments and facts raised in the Reply, which Mr. Roybal has not had a full opportunity to rebut.

The Defendants' first argument -- that they are prejudiced by increased litigation costs -- somewhat misses the mark.  The Defendants contend that it would have been cheaper and more efficient if Mr. Roybal had joined his wife's complaint or intervened in her lawsuit.  That contention may be true, but it does not directly address the issue of laches.  Just because Mr. Roybal may have brought his lawsuit earlier does not mean that he was obligated to be part of his wife's lawsuit.  If Mr. Roybal had filed a separate lawsuit on the same day as Mrs. Roybal's action, the Defendants would still be facing multiple lawsuits with their attendant costs.  Furthermore, the Defendants are likely facing an additional lawsuit only because Mrs. Roybal had some success in her case.  If Mrs. Roybal had lost on all her claims, it is likely that Mr. Roybal would not have filed this action.  The Defendants would thus have faced only a single plaintiff's claims.  With the benefit of hindsight, it may appear that efficiency would be served by Mr. Roybal bringing suit earlier.  Viewed ex ante, however, Mr. Roybal's delay may just as well have saved the Defendants time and money.

The Plaintiffs' argument, in contrast, is on point.  The prejudice that laches contemplates is prejudice that arises because of a plaintiff's undue delay in asserting his or her rights.  See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997); Magnolia Mountain Ltd., Partnership v. Ski Rio Partners, Ltd. ¶ 33, 139 N.M. 288, 297, 131 P.3d 675, 684 (Ct. App. 2005).  In their Reply, the Defendants attempt to make such a showing of changed position and prejudice, contending that they would have embarked on a different course in Mrs. Roybal's lawsuit if they had known that Mr.

Roybal was also planning to sue.  Beatrice Brickhouse, the City Defendants' attorney, states that the City of Albuquerque would have done a number of things differently, including: (i) moving to join Mr. Roybal as an involuntary plaintiff; (ii) investigating his claims more thoroughly; (iii) questioning him before the jury in Mrs. Roybal's case about financial bias from future litigation; and (iv) appealing Mrs. Roybal's case.  See Exhibit B to Reply, Affidavit of Beatrice Brickhouse ¶ 5(a), (c), (e) & (f), at 2-3 (executed October 20, 2008)(Doc. 35-2).  Because these new facts were first raised in the Reply, Mr. Roybal has not had a full and fair opportunity to come forward with additional facts or argument in rebuttal.  The Defendants' attorneys also did not raise this particular argument at the hearing.  Given that the Court is holding laches inapplicable, the Court will defer ruling on this issue unless and until it becomes necessary in the future, which will also allow Mr. Roybal a fair opportunity to respond to the Defendants' assertions should it become necessary for some reason.

> **IT IS ORDERED** that the Defendants' Joint Motion for Summary Judgment is denied.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Joseph P. Kennedy
Shannon L. Kennedy
Mary Louise Boelcke
Kennedy & Oliver,  P.C.
Albuquerque, New Mexico

   _Attorneys for the Plaintiff_

-20-

Beatrice J. Brickhouse
City of Albuquerque Legal Department
Albuquerque, New Mexico

    *Attorney for Defendants City of Albuquerque,*
        *Yvonne Martinez, Dennis Tafoya, and*
        *Lorraine Sadler-Lopez*

Patrick D. Allen
Patricia Padrino
Yenson, Lynn, Allen & Wosick, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Peter Dwyer*